IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

NO. 4:19-CV-8-FL

LAKIESHA CROSS, JOYCE FULFORD, )
DORTHEA EDMOND, BRIANNA )
TAYLOR, VANITY BENTON, )
FRENCESCO WEST, PARIS TAYLOR, )
PARIS TAYLOR, parent and natural )
guardian of C.P., Jr., MATTHEW )
WOODRUFF, and MAMIE PATTERSON, )
individually and on behalf of all those )
similarly situated, )
                   )                    ORDER
            Plaintiffs, )
                   )
      v. )
                   )
FORMATIV HEALTH MANAGEMENT, )
INC. and ETRANSMEDIA )
TECHNOLOGY, INC., )
                   )
            Defendants. )

This matter is before the court upon defendants' motion to dismiss pursuant to Federal Rule

of Civil Procedure 12(b) (DE 38). The motion has been briefed fully and the issues raised are ripe

for ruling. For the following reasons, defendants' motion is granted.

## STATEMENT OF THE CASE

Plaintiffs commenced this putative class action on January 11, 2019, and filed the operative

amended complaint on May 31, 2019, asserting claims under North Carolina law against

defendants for overcharging them for their medical records in violation of standards set forth in

the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), the Health

Information Technology for Economic and Clinical Health Act ("HITECH"), 42 U.S.C. § 300jj-

11, and their implementing regulations governing fees for provision of medical records. Plaintiffs assert claims under the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. § 75-1.1 et seq., as well as common law claims for negligent misrepresentation and unjust enrichment. Plaintiffs seek declaratory and injunctive relief, as well as damages, including trebled and punitive damages, on behalf of themselves and a proposed class, in an amount in excess of $5,000,000.00. Plaintiffs assert subject matter jurisdiction over this matter under the Class Action Fairness Act, 28 U.S.C. § 1332(d).

Defendants filed the instant motion to dismiss on June 27, 2019, seeking dismissal of plaintiffs' claims for failure to state a claim.[1] In support of their motion, defendants rely upon a declaration of Nicholas Stefanizzi ("Stefanizzi"), attaching invoices sent for plaintiffs' requested medical records.

Plaintiffs responded in opposition on August 1, 2019, relying upon an affidavit of Eric N. Linsk, one of plaintiffs' attorneys, attaching an order in a civil action in the Circuit Court for Hillsborough County, Florida, captioned Allen v. Healthport Technologies, LLC, No. 12-CA-013154 (Nov. 19, 2014). Defendants replied in support of their motion on August 29, 2019.

## STATEMENT OF ALLEGED FACTS

The facts alleged in the operative complaint[2] may be summarized as follows. Plaintiffs are residents of this district. Defendant Formative Health Management, Inc. ("Formativ") is a Delaware corporation with its principal place of business in Florida. According to the complaint, defendant Formativ is "a technology-enabled health services company focused on transforming

---

[1]    Defendants also moved to dismiss plaintiffs' original complaint, but upon filing of the operative amended complaint the court denied as moot that motion on June 5, 2019.

[2]    All references henceforth to the "complaint" in the text or "Compl." in citations to the record are to the amended complaint (DE 30), filed May 31, 2019, unless otherwise specified.

the patient-provider experience," whose services "help health systems respond to the rise of consumerism by combining powerful technology with an empathetic approach to customer service" and help clients "enhance their patients' experience." (Compl. ¶ 28). Shortly after Formativ's formation in 2017, it acquired defendant Etransmedia, "a medical billing and healthcare software company based in North Carolina" with a principal place of business in New York. (Id. ¶ 29). According to the complaint, both defendants "use each others' names interchangeably when fulfilling medical-record and medical-bill requests," and both have "responded to some of the same record requests from Plaintiffs." (Id. ¶ 31).

According to the complaint, defendants "contract to manage the process of responding to a medical-records and/or medical bills request for its hospital and clinic clients, including receiving the request, locating responsive documents, providing a response to the patient, invoicing the patient, and collecting payment." (Id. ¶ 56). "Ordinarily, [d]efendants require advance payment in full for delivery of medical records and/or medical bills, and will not provide the requested medical records and/or medical bills unless the invoiced amount is paid in full and in advance." (Id. ¶ 58).

According to the complaint, defendants "routinely impose an improper and unlawful series of charges, including a 'Base Rate' of $10.00 and per-page copy charges even when no paper copies were requested." (Id. ¶ 59).

Plaintiffs allege that defendants are aware that a federal law "Privacy Rule" "permits covered entities and their business associates to impose only reasonable, cost-based fees to provide individuals (or their designated recipient) with copies of their medical records and/or medical bills." (Id. ¶ 60). According to plaintiffs, the "Privacy Rule" is a "privacy standard[] for health information" published by the United States Department of Health and Human Services ("HHS")

in 2000, "in accordance with instructions from Congress flowing from HIPAA." (Id. ¶ 45 (citing Standards for Privacy of Individually Identifiable Health Information – Final Rule, 65 Fed. Reg. 82462 (Dec. 28, 2000)).

According to the complaint, "the Privacy Rule addressed how consumers could obtain their PHI and how much they could be charged for copies of it," (Compl. ¶ 47), and HITECH "clarified the procedures under which a consumer would obtain their PHI," including by "capp[ing] the fee that a provider could charge" for copies of PHI in electronic format. (Id. ¶ 49 (citing 45 C.F.R. § 164.524(c)(4)). Plaintiffs allege that in 2013, HHS "published amendments to the Privacy Rule," and, in 2016, "issued a guidance document clarifying" "limits on what patients or their designated recipients may be charged for healthcare information," (id. ¶¶ 50, 52), including allowance to "charge the requester a flat fee of $6.50" to provide records. (Id. ¶ 53).

According to the complaint, defendants are "aware that the [Privacy Rule] as interpreted by HHS allows them to charge individuals only on the basis of its actual costs, or an average of their actual costs." (Id. ¶ 61). Plaintiffs allege that "[d]espite knowing that federal law allows them to charge individuals only on the basis of their actual costs, or an average of their actual costs," defendants "overcharge patients and their agents for their records." (Id. ¶ 62).

As detailed in the complaint, "[p]laintiffs properly requested [PHI] from their medical providers or [d]efendants as an agent of their medical providers, and directed that the records be sent to their lawyer." (Id. ¶ 63). "The medical providers did not fulfill the requests, instead referring" them to defendants, but defendants allegedly "did not follow the HITECH cost rule in responding." (Id.). In particular, plaintiffs allege a similar pattern of activity related to each named plaintiff. For example:

> In a written request dated May 15, 2018 and signed by her, Plaintiff Lakiesha Cross ["Cross"] requested copies of her medical records and/or medical bills from Eastern

Radiologists, Inc., care of Formativ Health in Charlotte, North Carolina. In her request, Cross requested copies of her medical records and/or medical bills in electronic format only. Cross's request was headlined, "PATIENT DIRECTIVE TO HEALTHCARE PROVIDER PURSUANT TO HITECH RECORDS REQUEST." Cross needed her medical records for a personal-injury matter. Cross directed the recipient of this request to send the records to her attorney, Christopher C. Kessler ["Kessler"], The Kessler Law Firm P.L.L.C., P.O. Box 8064, Greenville, NC 27835. Cross's request was accompanied by documents from The Kessler Law Firm P.L.L.C. which asserted that the HITECH Act, 42 U.S.C. §17935(e)(1), and the statute's implementing regulation at 45 C.F.R. § 164.524(c)(4), applied to the request. [Defendant] Etransmedia responded by sending a bill for $12.25 to The Kessler Law Firm. Etransmedia did not notify the Kessler Law Firm that it handled requests to the medical provider in question instead of Formativ or that it was a different entity than Formativ. In its response to Cross's request, Etransmedia did not state that these charges reflected its actual costs, or that these charges reflected an average of its actual costs. Neither [d]efendant revealed that these charges are unlawful under the HITECH act. On behalf of and as agent of Cross, Cross's attorney paid the expense. Cross's attorney was required to pay the expense in order to obtain the medical records for Cross's personal-injury matter. . . . The expense was deducted from Cross's net settlement in her personal-injury matter.

(Id. ¶¶ 65-73, 75).

Similarly, plaintiffs Joyce Fulford ("Fulford"), Dorthea Edmond ("Edmond"), Brianna Taylor ("Brianna Taylor"), Vanity Benton ("Benton"), Francesco West ("West"), Paris Taylor ("Paris Taylor"), C.P., Jr. ("C.P."), Matthew Woodruff ("Woodruff"), and Mamie Patterson ("Patterson"), requested copies of their medical records from a medical provider for a personal injury matter. They directed the recipient to send the records to Kessler. Defendants sent bills for each plaintiff to Kessler, totaling $12.25, $10.75, $12.25, $10.75, $13.00, $10.75, $11.50, $10.75, and $10.75, respectively. Kessler paid the bills on behalf of and as agent for plaintiffs Fulford, Edmond, Benton, West, Paris Taylor, C.P., Woodruff, and Patterson.

With respect to plaintiff Brianna Taylor, Kessler paid only "$6.50 to Etransmedia and included a note that the facility had overcharged Taylor, citing the HITECH Act." (Id. ¶ 107). "Defendants have refused to provide the medical records and/or medical bills until Taylor pays another $5.75." (Id. ¶ 108).

Plaintiffs allege:

> In each case, [defendants] imposed a fee described as a 'Base Rate.' In nearly every case, [d]efendants imposed additional per-page charges. In cases where the [p]laintiffs made the requests directly and asked that the medical records and/or medical bills be sent to his or her layer, . . . [d]efendants sent an invoice to the law firm taking the position that the law firm had requested the copies. In none of the cases did [d]efendants state that the charges they sought to impose reflected their actual costs, or that these charges reflected an average of their actual costs, as [allegedly] required by law.

(Id. ¶ 185).

## COURT'S DISCUSSION

A.     Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, the "court accepts all well pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).

B.     Analysis

1.     Private Right of Action

Defendants argue as a threshold matter that all of plaintiffs' claims should be dismissed as a matter of law because HIPAA and HITECH do not provide a private right of action. However,

where plaintiffs assert on the face of the complaint only North Carolina state law claims, and not claims under HIPAA or HITECH, defendants have not demonstrated a basis for dismissal of the action on this basis alone.

Indeed, defendants cite no case in which a court has dismissed the state law claims asserted by plaintiffs solely on the basis that HIPAA and HITACH provide no private cause of action. Rather, the starting point to the analysis of many courts that have addressed the issue is that HIPAA and HITACH provide no private cause of action, but then it still remains necessary to determine whether or not any of the asserted state law causes of action provides a viable alternative. See, e.g., Faber v. Ciox Health, LLC, 944 F.3d 593, 597 (6th Cir. 2019) ("Tennessee common law is no substitute for the private right of action that Congress refused to create in HIPAA. That unavoidable conclusion has consequences. Here, it means that Plaintiffs cannot prove every element of their claims."). Accordingly, the court declines to dismiss plaintiffs' claims solely on the basis of a lack of private cause of action in HIPAA and HITACH. The court turns to examining issues of state law in the analysis below.

2.      UDTPA

Under the UDTPA, "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." N.C. Gen. Stat. § 75-1.1(a). "In order to establish a violation of N.C.G.S. § 75–1.1, a plaintiff must show: (1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which proximately caused injury to plaintiffs." Walker v. Fleetwood Homes of N. Carolina, Inc., 362 N.C. 63, 71-72 (2007). Whether conduct by defendants constitutes an unfair or deceptive act or practice is a question of law for determination by the court. See id.

In addition, courts applying the UDTPA "differentiate between contract and deceptive trade practice claims, and relegate claims regarding the existence of an agreement, the terms contained in an agreement, and the interpretation of an agreement to the arena of contract law." Broussard v. Meineke Disc. Muffler Shops, Inc., 155 F.3d 331, 347 (4th Cir.1998) (quotations omitted). "North Carolina law requires a showing of substantial aggravating circumstances to support a claim" under the UDTPA. Id. (quotations omitted). It is "unlikely that an independent tort could arise in the course of contractual performance, since those sorts of claims are most appropriately addressed by asking simply whether a party adequately fulfilled its contractual obligations." Strum v. Exxon Co., U.S.A., 15 F.3d 327, 333 (4th Cir.1994).

Plaintiffs' UDTPA claim fails as a matter of law for multiple reasons. First, [g]iven the contractual center of this dispute, plaintiffs' [UDTPA] claims are out of place." Broussard, 155 F.3d at 347. Here, a simple contract for the provision of a product, copies of electronic medical records, underlies plaintiffs' alleged entitlement to relief. Defendants allegedly billed plaintiffs for such product, and plaintiffs allegedly paid in each instance, except for one, according to the billed amount to receive such product. (Compl. ¶¶ 71, 73, 82, 85, 93, 96, 105, 122, 125, 135, 138, 146, 149, 157, 160, 168, 171, 179, 182).

A bill for the sale of a product and plaintiffs' payment of the billed amount to receive the product constitutes an offer and acceptance, and thus a completed contract. See Yeager v. Dobbins, 252 N.C. 824, 828 (1960) (stating that essential elements to formation of a contract are that an "offer must be communicated, must be complete, and must be accepted in its exact terms"); see, e.g., Erskine v. Chevrolet Motors Co., 185 N.C. 479, 117 S.E. 706, 710 (1923) ("[W]here one makes a promise conditioned upon the doing of an act by another, and the latter does that act, the contract is not void for want of mutuality."); Hardy v. Ward, 150 N.C. 385, 64 S.E. 171, 174 (1909)

("[T]he contract is really an offer on one side, with a provision that this offer must be assented to and accepted, where a mere acceptance is contemplated, or payment must be made, where payment was the act of acceptance contemplated."); CIM Ins. Corp. v. Cascade Auto Glass, Inc., 190 N.C. App. 808, 812 (2008) ("[T]he offeror is the master of his offer. He is entitled to require acceptance in precise conformity with his offer.")..  Accordingly, where a contract governs the relationship between the parties, the rights and remedies of the parties lie in contract law and not in the UDTPA.

Plaintiffs argue that they have alleged no contract between themselves and defendants, and that they requested medical records instead from their providers. Plaintiffs' request for medical records, however, is not the offer at issue.  Rather, the offer at issue is defendants' invoice for the provision of the records, and the acceptance of that offer is the payment by plaintiffs.  Moreover, it is unnecessary to resolve definitively, as plaintiffs argue, whether there were "express written contracts with Plaintiffs." (Pls' Mem. (DE 43) at 20).  The key issue for the UDTPA claim is that issues "regarding the existence of an agreement, the terms contained in an agreement, and the interpretation of an agreement" must be relegated "to the arena of contract law" and not adjudicated under the guise of a UDTPA claim.  Broussard, 155 F.3d at 347.

In addition, and in the alternative, plaintiffs have not pleaded facts establishing a viable UDTPA claim.  In the complaint, plaintiffs assert that defendants engaged in an "unfair, deceptive, and fraudulent" practice by "disregarding the HITECH Act's fee requirements, and  . . . withhold[ing] the requested documents unless Plaintiffs and Class members paid the unlawfully inflated and improper invoices."  (Compl. ¶ 206).

Plaintiffs' UDTPA claim premised upon a predicate violation of federal law and regulations fails as a matter of law. While "a violation of a regulatory statute which governs business activities may also be a violation of N.C. Gen. Stat. § 75–1.1 . . . such a regulatory

violation . . . does not automatically result in an unfair or deceptive trade practice." Walker v. Fleetwood Homes of N. Carolina, Inc., 362 N.C. 63, 70 (2007). Instead, for example, the North Carolina Supreme Court has looked to whether the "statute at issue defined in detail unfair methods of [business] and unfair and deceptive acts or practices in the . . . industry, thereby establishing the [legislative] intent to equate a violation of that statute with the more general provision of § 75-1.1." Id. at 71 (citing Gray v. N.C. Ins. Underwriting Ass'n, 352 N.C. 61, 71(2000)). The North Carolina Supreme Court has not indicated that it would find a violation of HITECH or the Privacy Rule upon which plaintiffs rely here, in the context alleged here, to be a valid predicate for a UDTPA claim. Absent such indication, this court will not undertake to expand North Carolina law to recognize such a claim.

Nor has the North Carolina Court of Appeals indicated that the alleged HITECH and Privacy Rule violations in this case would be a proper predicate for a UDTPA claim. According to that court, a violation of a statute or regulation does not constitute a per se UDTPA violation unless the statue or regulation "specifically designate[s] that a violation of the [statute or regulation] is also a violation of [the UDTPA]" or "specifically defines and proscribes conduct which is unfair or deceptive within the meaning of the UDTPA." Noble v. Hooters of Greenville (NC), LLC, 199 N.C. App. 163, 170 (2009) (emphasis in original).

Here, neither HITECH, nor the Privacy Rule and HHS guidance interpreting it as described by plaintiffs in their complaint, specifically designate that a violation thereof is also a violation of the UDTPA. (See, e.g., Compl. ¶¶ 45-55). Likewise, neither specifically defines and proscribes conduct which is unfair or deceptive within the meaning of the UDTPA. Rather, as described by plaintiffs in the complaint, the Privacy Rule and HHS guidance interpreting it, sets forth guidelines for calculating fees that covered entities may charge patients for medical records. (Id.). It does not

specifically define and proscribe "<u>unfair or deceptive acts or practices</u> in or affecting commerce" N.C. Gen. Stat. § 75-1.1(a) (emphasis added).

Accordingly, where plaintiffs' UDTPA claim is premised upon a violation of federal law, but such violations of federal law are not unfair or deceptive within the meaning of the UDTPA, plaintiffs' UDTPA claim must be dismissed as a matter of law.

Cases cited by plaintiffs recognizing a UDTPA violation based upon predicate violation of law are inapposite. For example, plaintiffs cite <u>Stanley v. Moore</u>, 339 N.C. 717, 722 (1995), in which the North Carolina Supreme Court held that a violation of the North Carolina Ejectment of Residential Tenants Act, N.C. Gen. Stat. § 42-25.9, could support a claim of trebled damages under the UDTPA. However, in <u>Stanley</u>, the court expressly noted that North Carolina law had already recognized that "a landlord's trespass upon the leased premises, eviction of the tenant without resort to judicial process, and conversion of the tenant's personal property <u>constituted unfair or deceptive acts or practices in commerce within the meaning of N.C.G.S. § 75–1.1</u>." (<u>Id.</u> at 723 (emphasis added) (citing <u>Love v. Pressley</u>, 34 N.C. App. 503, 517(1977)).

The court also found determinative a provision in the Ejectment of Residential Tenants Act, which provided that "[t]he remedies created by this section are supplementary to all existing common-law and statutory rights and remedies." <u>Id.</u> (quoting N.C. Gen. Stat. § 42-25.9(c)). The court reasoned: "We are convinced that the language of subsection (c) expressly preserves the rights of a tenant who is wrongfully evicted to pursue alternative common law and statutory claims for relief, including claims for treble damages and attorney's fees under the Unfair and Deceptive Practices Act, an Act which predated the enactment of the Ejectment of Residential Tenants Act." <u>Id.</u>

Stanley thus is instructively distinguishable from the instant case because the statute in Stanley not only proscribed conduct that was recognized under North Carolina law as unfair, deceptive, and injurious to well-being of tenants, but also expressly reserved remedies for a violation thereof. There is no similar recognition under North Carolina law that HITECH or the Privacy Act guidelines plaintiffs rely upon proscribe conduct that is unfair, deceptive, and injurious to well-being of the consuming public, much less on a par with a landlord's resort to a physical self-help eviction, as in Stanley.

Similarly inapposite is Drouillard v. Keister Williams Newspaper Servs., Inc., 108 N.C. App. 169 (1992), where the court held that a violation of the North Carolina Trade Secrets Protection Act, "Article 24, Chapter 66," based upon a purported "misappropriation of trade secrets" to be sufficient to support a claim of "[u]nfair methods of competition in or affecting commerce," under the UDTPA. Id. at 172-173. Unlike the circumstances alleged in the instant case, the trade secrets violations in that case readily translated to "unfair methods of competition," as required under the UDTPA. Drouillard also involved a state statute governing the same types of conduct as the UDTPA, whereas this case involves an exclusive and comprehensive federal statutory and regulatory scheme, as alleged by plaintiffs, governing procedures and guidelines for charging for copies of PHI. Cf. Skinner v. E.F. Hutton & Co., 314 N.C. 267, 275 (1985) (holding that securities transactions allegedly in violation of the antifraud provisions of the North Carolina Securities Act and the federal Securities Exchange Act of 1934 did not constitute per se violations of the UDTPA, where such transactions "were already subject to pervasive and intricate regulation under" state and federal law).

Plaintiffs also argue that they have alleged an actionable unfair and deceptive trade practice by defendants based upon alleged "systematic overcharging of Plaintiffs," (pls' Mem. (DE 43) at

25), citing <u>Sampson-Bladen Oil Co. v. Walters</u>, 86 N.C. App. 173, 177 (1987). The cited case, however, is instructively distinguishable. There, the liable defendant charged the plaintiff "for approximately 2,600 more gallons of oil than they received," over a two year period by creating false invoices for the oil that was never delivered. <u>Id.</u> at 174. Here, defendants are not alleged to have created false invoices for products not received by plaintiffs over a two year period. Unlike in <u>Sampson-Bladen Oil Co.</u>, the alleged bills here stated the basis for the charges and there are no facts alleged to infer an intent to deceive. Indeed, there is a fundamental difference between a case such as <u>Sampson-Bladen Oil Co.</u>, where a defendant charged for products not actually delivered, and the instant case where the defendant allegedly determined the rate for a charge based upon its own understanding of the law. (<u>See, e.g.</u>, Compl. ¶ 185). Moreover, in this case, the complaint describes a single instance for each plaintiff of an alleged overcharge in violation of HITECH and Privacy Rule regulations, not multiple charges for deliveries of products that never arrived. Accordingly, <u>Sampson-Bladen Oil Co.</u> does not support a UDTPA claim under the circumstances alleged.

In sum, plaintiffs' UDTPA claim fails as a matter of law because a violation of HITECH or the Privacy Rule is not an unfair and deceptive act under the meaning of the UDTPA, and because plaintiffs have not otherwise alleged an unfair and deceptive act by defendants.

      b.     Negligent Misrepresentation

"The tort of negligent misrepresentation occurs when a party justifiably relies to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care." <u>Raritan River Steel Co. v. Cherry, Bekaert & Holland</u>, 322 N.C. 200, 206 (1988).

Here, plaintiffs' negligent misrepresentation claims fail for multiple independent reasons. First, the claim is barred by the North Carolina "economic loss rule," because a contractual

relationship underlies plaintiffs' claims. <u>Legacy Data Access, Inc. v. Cadrillion, LLC</u>, 889 F.3d 158, 164 (4th Cir. 2018).

Second, plaintiffs have not alleged with particularity the contents of the false representations made. The complaint describes various types of representations, but none with particularity. Plaintiffs assert that defendants made a negligent misrepresentation that plaintiffs "were and are required to remit payment for 'Base Rate,' 'additional pages,' or other charges to receive PHI," and that these statements were false "because the HITECH Act prohibits such fees." (Compl. ¶¶ 213, 214). In addition, plaintiffs assert that defendants misrepresented that the "Patient-Initiated Requests were instead requests by the patients' law firms." (<u>Id.</u> ¶ 217). Plaintiffs also assert that defendants made "statements that the charges were lawful." (e.g., <u>Id.</u> ¶ 74). Plaintiffs do not state with particularity, however, the wording, content, setting, or context of any such statements made by defendants.

Third, plaintiffs do not allege a misrepresentation of fact, but rather a misrepresentation of law. A party's statement of a legal position or an assertion about its rights or position under the law is not an actionable misrepresentation. <u>See</u> <u>Forbis v. Neal</u>, 361 N.C. 519, 526–27 (2007) (stating that fraud requires a "[f]alse representation or concealment of <u>a material fact</u>") (emphasis added); <u>Branch Banking & Trust Co. v. Columbian Peanut Co.</u>, 649 F. Supp. 1116, 1121 (E.D.N.C.1986) ("To assert in good faith a claim predicated on an erroneous interpretation of the law is not an unfair act . . . as the remedy therfor [sic] lies in the law itself, i.e., such an erroneous view will not prevail."); <u>Dalton v. Dalton</u>, 164 N.C. App. 584, 587 (2004) ("[F]raud cannot be premised upon a misrepresentation of law.").

Fourth, and relatedly, plaintiffs fail to plead actual, reasonable, reliance as a proximate cause of their injury. Although they assert they "actually and reasonably relied on [d]efendants'

statements that the charges were lawful," (e.g., Compl. ¶ 74), the court need not accept for purposes of the instant motion such conclusory statement of the elements of the claim. See Nemet Chevrolet, 591 F.3d at 255. Rather, plaintiffs must allege facts giving rise to a plausible inference of reliance. See Iqbal, 556 U.S. at 678. Plaintiffs fail to do so. Indeed, if anything, the complaint suggests the contrary. In each instance, plaintiffs allege that their attorney requested their medical records "pursuant to HITECH," and in several instances their attorney accompanied the request with documents "which made clear that the HITECH Act . . . and the statute's implementing regulation . . . applied to [the] request." (E.g., Compl. ¶¶ 70, 81). In each instance, plaintiffs' attorney remitted a payment on behalf of plaintiffs, (id. ¶¶ 73, 85, 96, 107, 125, 138, 149, 160, 171, 182), and even in one case "followed up on the improper bill and record request status by e-mailing staff for Formativ." (Id. ¶ 111).

In this manner, plaintiffs have not alleged they actually relied upon purported statements by defendants, where their attorney received and paid the bills. Plaintiffs also have not alleged they took any action in reliance on the statements, again because their attorney, not the plaintiffs, received and paid the bills. In addition, plaintiffs have not alleged their reliance, if any, was reasonable because their attorney is alleged to have known and informed defendant in the first instance the rules upon which the charges should be based. Plaintiffs also were in a position to investigate whether the amounts billed were lawful, because, as alleged in the complaint, plaintiffs' attorney had all the information they needed to conclude that the amounts billed were in fact, in their view, unlawful before payment was made. For these reasons, plaintiffs fail to allege the necessary element of reliance.

Fifth, plaintiffs cannot establish that defendants owed a duty of care to plaintiffs under the circumstances alleged. "Negligence is the failure to exercise proper care in the performance of a

legal duty which the defendant owed the plaintiff under the circumstances surrounding them." Dunning v. Forsyth Warehouse Co., 272 N.C. 723, 725 (1968). Here, plaintiffs fail to demonstrate under North Carolina law a recognition of a duty of care not to overcharge for medical records.

Plaintiffs suggest that statutory rules can create a standard of care, the violation of which will constitute a breach of a duty of care on the part of defendant. Plaintiffs cite to Springer v. Joseph Schlitz Brewing Co., 510 F.2d 468, 472 (4th Cir. 1975), for the proposition that, under North Carolina law, "violation of a statute designed to protect persons or property is a negligent act, and if such negligence proximately causes injury, the violator is liable." For this proposition, however, Springer cites Murray v. Bensen Aircraft Corp., 259 N.C. 638 (1963) (federal aircraft safety statute), and Bell v. Page, 271 N.C. 396 (1967) (town ordinance regulating private swimming pools). Springer itself involved discharge of sewage alleged to have a "toxic or poisonous effect" and "harmful to aquatic life in the receiving stream." 510 F.2d at 473. Each of the cited cases recognized a duty arising from statute protecting against physical harm to another's person or property. As such, they are insufficient to establish under North Carolina law a duty arising from a statute and regulations, as here, allegedly governing the amount that can be charged for medical records.

Plaintiffs also rely upon Acosta v. Byrum, 180 N.C. App. 562, 568 (2006), in which the plaintiff asserted a claim of negligent infliction of emotional distress against her psychiatrist, based upon the allegation that the psychiatrist "negligently engaged in conduct by permitting [an associate] to use his access code in violation of the rules and regulations of the University Health Systems, Roanoke Chowan Hospital, and HIPAA," resulting in dissemination of the plaintiff's medical records to third parties. There, the North Carolina Court of Appeals opined that HIPPA, in addition to the internal rules and regulations of the defendants' employer, established a "duty to

maintain privacy in [the plaintiff's] confidential medical records," and "that these rules provide the standard of care." Id.

Acosta, however, is inapposite to plaintiffs' negligent misrepresentation claim, because Acosta involved a duty arising from a physician-patient relationship, and the standard of care pertained to the maintenance of the privacy of the patient's medical records. Defendants, by contrast, are not alleged to be physicians, and there are no facts alleged permitting an inference that they adopted a physician-patient relationship with plaintiffs. Moreover, where Acosta involved maintenance of the privacy of the patient records, the instant claims concern merely the amount of money properly chargeable for copies of the records, when sending them to an attorney representing plaintiffs in personal injury matters.

Plaintiffs suggest, nonetheless, that their medical providers delegated responsibility to defendants to provide the requested records, and assumed the trust relationship flowing between an ordinary patient-physician relationship. Plaintiffs, however, cite no authority for stretching a physician-patient duty of care, under North Carolina law, to a third-party that charges for copies of medical records. The court has identified no basis in the law for doing so under the circumstances alleged.

Plaintiffs also argue that a duty of care arises when "one who in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions." (Pls' Mem. (DE 43) at 28). The rule of law upon which plaintiffs rely, however, is more limited than plaintiffs suggest and inapplicable under the facts alleged here.

The North Carolina Supreme Court has recognized potential liability for "Information Negligently Supplied for the Guidance of Others" as follows:

(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, <u>supplies false information for the guidance of others</u> in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

(2) The liability stated in Subsection (1) is limited to loss suffered

(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

<u>Raritan</u>, 322 N.C. at 209 (quoting Restatement (Second) of Torts § 552 (1977)) (emphasis added). For example, "under the Restatement approach[,] an accountant who audits or prepares financial information for a client owes a duty of care not only to the client but to any other person, or one of a group of persons, whom the accountant or his client intends the information to benefit; and that person reasonably relies on the information in a transaction, or one substantially similar to it, that the accountant or his client intends the information to influence." <u>Id.</u> at 210 (emphasis added). "If the requisite intent is that of the client and not the accountant, then the accountant must know of his client's intent at the time the accountant audits or prepares the information." <u>Id.</u>

This rule is inapposite here. First, there is no basis to infer from the facts alleged that the bills sent by defendants, upon which plaintiffs' misrepresentation claim is based, were intended to supply "information for the guidance of others in their business transactions." <u>Raritan</u>, 322 N.C. at 209. As alleged, the bills were sent to plaintiffs' attorneys to charge a fee for the provision of records, not to supply information. Second, there is no basis to infer that defendants intended to supply information, or to have the recipient supply information to plaintiffs, for their "benefit and

guidance." Id. Defendants are not alleged to have been in the business of providing guidance, or to have intended to provided guidance, through their bills.

In sum, plaintiffs have failed to demonstrate a duty of care arising under North Carolina law not to overcharge for medical records under the circumstances alleged. Plaintiffs' negligent misrepresentation claim thus fails as a matter of law for failure to establish this element of the claim and additional elements noted herein.

c.    Unjust Enrichment

"The general rule of unjust enrichment is that where services are rendered and expenditures made by one party to or for the benefit of another, without an express contract to pay, the law will imply a promise to pay a fair compensation therefor." Krawiec v. Manly, 370 N.C. 602, 615 (2018). "In order to establish a claim for unjust enrichment, a party must have conferred a benefit on the other party, and the benefit must not be gratuitous and it must be measurable." Id. (quotations omitted). "A claim of this type is neither in tort nor contract but is described as a claim in quasi contract or a contract implied in law." Booe v. Shadrick, 322 N.C. 567, 570 (1988). Accordingly, "[i]f there is a contract between the parties the contract governs the claim and the law will not imply a contract." Id.

Plaintiffs' unjust enrichment claim fails as a matter of law because there is a contract governing the payment obligation as between the parties. Plaintiffs expressly allege that they were billed for their medical records, and that they paid such bills. Such bills and the payments thereof, constituted a contract between the parties that precludes plaintiffs' claim. Id.

In addition, and in the alternative, plaintiffs' claim for unjust enrichment fails because the doctrine of voluntary payment applies based upon the allegations of the complaint. Under North Carolina law, it is a "well established rule of law that the voluntary payment of money by a person

who has full knowledge of all the facts cannot be recovered." <u>Guerry v. Am. Trust Co.</u>, 234 N.C. 644, 647 (1951); <u>see</u> <u>Collins v. Covert</u>, 246 N.C. 303, 306 (1957). Here, where it is alleged that plaintiffs' attorney requested medical records from defendants, expressly citing provisions of HITECH and the Privacy Rule allegedly applicable to the requests, and where it is alleged that defendants provided an itemized bill showing charges for the medical records, and where it is alleged that plaintiffs' attorney proceeded to pay the bills as requested, in all cases except for one plaintiff, full payment thus was made by plaintiffs with knowledge of all the facts pertinent to their instant claims. Accordingly, the voluntary payment doctrine bars their claims for unjust enrichment.

Plaintiffs argue that the voluntary payment doctrine should not apply because they have alleged they were "forced to pay" the billed charges "in order to obtain their medical records" for their personal injury matters. (E.g. Compl. ¶ 226). However, "[a] rule that has been frequently applied is that to constitute the coercion or duress which will be regarded as sufficient to make a payment involuntary, there must be some actual or threatened exercise of power possessed, or believed to be possessed, by the party exacting or receiving the payment over the person or property of another, for which the latter has no other means of immediate relief than by making the payment." <u>Big Bear of N. Carolina, Inc. v. City of High Point</u>, 294 N.C. 262, 266 (1978). Here, plaintiffs do not meet this standard of "coercion or duress" because they have alleged their attorney both requested and paid for the medical records, specifically citing HITECH and in some instances the Privacy Rule.

Furthermore, in the alternative, plaintiffs have not demonstrated that "an equitable remedy based upon a quasi-contract or a contract implied in law," necessary to establish an unjust enrichment claim, is warranted under the circumstances alleged. <u>Ron Medlin Const. v. Harris</u>, 364

N.C. 577, 580 (2010). Recovery "must depend on the justice and equity of the case." <u>Dean v. Mattox</u>, 250 N.C. 246, 251 (1959). "The purpose of such equity-inspired relief is to provide just compensation for the wrong, not to impose a penalty, and such relief is given in accordance with the principles governing equity jurisdiction, not to inflict punishment but to prevent an unjust enrichment." <u>Hannon Armstrong & Co. v. Sumitomo Tr. & Banking Co.</u>, 973 F.2d 359, 365 (4th Cir. 1992).

Here, the issue of the amount of charges allowed under HITECH and the Privacy Rule, where an attorney requests medical records on behalf of a client for a personal injury matter, as here, properly is an issue to be determined by HHS and subject to resolution as a matter of federal law.[3]  In such circumstances, plaintiffs have not demonstrated that justice and equity under North Carolina law requires an equitable remedy of unjust enrichment. <u>Cf.</u> <u>Faber</u>, 944 F.3d at 597 ("Plaintiffs cite no authority remotely suggesting that 'justice and equity' under Tennessee common law so requires.").

In sum, plaintiffs have failed to allege facts establishing a claim to the equitable remedy of a contract implied in law to recover their voluntary payment of alleged overcharges.  Therefore, their unjust enrichment claim must be dismissed as a matter of law.

        d.        Dismissal With Prejudice

Given that plaintiffs' substantive claims fail as a matter of law, plaintiffs have not established entitlement to relief in the form of declaratory judgment, injunction, or punitive damages.  In addition, where the viability of plaintiffs' claims turns largely upon issues of the

---

[3] On January 27, 2020, the United States District Court for the District of Columbia declared unlawful and vacated a 2013 HHS rule pertaining to "third-party directive[s]" and 2016 HHS guidance regarding extension of "the Patient Rate to reach third-party directives."  <u>See</u> <u>Ciox Health, LLC v. Azar</u>, No. 18-CV-40-APM, 2020 WL 418454 * 25 (D.D.C. Jan. 27, 2020).  This ruling calls into question the legal premise to plaintiffs' complaint, namely whether defendant's alleged conduct violated HIPAA, HITECH, or the Privacy Rule.

scope of North Carolina law, and it is unlikely that any amendment to the factual allegations will cure the deficiencies in plaintiffs' claims, dismissal in this instance is with prejudice.

## CONCLUSION

Based on the foregoing, defendants' motion to dismiss (DE 38) is GRANTED. Plaintiffs' claims are DISMISSED WITH PREJUDICE. The clerk is DIRECTED to close this case.

SO ORDERED, this the 3rd day of February, 2020.

LOUISE W. FLANAGAN
United States District Judge